IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTE STRATTON,<br><br>    Petitioner,<br><br>    v.<br><br>JOHN C. MARSHALL, Warden CMC,<br><br>    Respondent.<br>_____/ | No. C 07-0431 CW<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING MOTION FOR JUDICIAL REVIEW OF THE RECORD AND COPY OF CASE DOCKET SHEET |

    Petitioner Monte Stratton, proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to title 28 U.S.C. § 2254, challenging as a violation of his constitutional rights the denial of annual parole suitability hearings by the California Board of Parole Hearings (Board).

    On March 10, 2008, Respondent John C. Marshall filed an answer.  On April 10, 2008 Petitioner filed a traverse.  Having considered all of the papers filed by the parties, the Court DENIES the petition.

    On December 15, 2008, Petitioner filed a motion for judicial review of the record and for a copy of the case docket sheet.  This order renders the motion moot, so the Court DENIES the motion.

# BACKGROUND

Petitioner is in the custody of the California Department of Corrections and Rehabilitation, serving a sentence of twenty-seven years to life following his conviction on August 19, 1982 in the Santa Clara County Superior Court for first-degree murder. (Pet'r Ex. B, Abstract of Judgment for Commitment to State Prison; Resp't Ex. 1, Legal Status Summary.) On December 4, 1995 Petitioner was convicted in the Solano County Superior Court for possession of heroin and received a sentence of one year and four months, to be served consecutively to his sentence for murder. (Resp't Ex. 1, Abstract of Judgment and Legal Status Summary.) Finally, in the Tuolumne County Superior Court, Petitioner was convicted for possession of an illegal substance in a jail, for which he was sentenced on November 8, 2004 to an additional four years. (Resp't Ex. 1, Legal Status Summary; Pet'r Ex. AA, Subsequent Parole Consideration Hearing at 69.)

Petitioner's most recent parole suitability hearing took place on January 19, 2006. (Pet'r Ex. AA, Subsequent Parole Consideration Hearing at 1.) The Board found that Petitioner was not then suitable for parole and set his next review for suitability four years hence. (Id. at 68-80.)

Petitioner committed the acts leading to his murder conviction on July 11, 1980. (Id. at 11.) At that time, Cal. Pen. Code Section 3041.5(b)(2) provided that, following any meeting at which a parole date had not been set, the Board would hear the case annually thereafter. Cal. Dept. of Corrections v. Morales, 514 U.S. 499, 503 (1995). Amendments to Section 3041.5(b)(2) between

1  1981 and 1994 established exceptions to the annual review rule.
2  Id.  One of these exceptions allows the Board to set a subsequent
3  parole hearing up to five years in the future if the prisoner has
4  been convicted of murder and the Board finds that it would not be
5  reasonable to expect parole to be granted in the intervening years.
6  § 3041.5(b)(2)(B) (West 2000).  The Board set Petitioner's next
7  hearing four years after his January, 2006 hearing under the
8  authority of this exception.

9  Petitioner filed a petition for a writ of habeas corpus in the
10 California Supreme Court on September 14, 2006, arguing that the
11 Board's denial of parole for four years violated the Ex Post Facto
12 Clause of the United Constitution, because at the time he committed
13 murder in 1980, Section 3041.5(b)(2) required annual parole
14 suitability hearings.  (Resp't Ex. 2.)  Petitioner also claimed
15 that his circumstances had changed since the January, 2006 hearing
16 and that he had no administrative avenues by which to request an
17 expedited review.  (Id.)  The California Supreme Court summarily
18 denied the petition on March 21, 2007.  (Id.)

19                              DISCUSSION
20 I.   Standard of Review
21    Because this case involves a federal habeas corpus challenge
22 to a state parole eligibility decision, the applicable standard is
23 contained in the Antiterrorism and Effective Death Penalty Act of
24 1996 (AEDPA).  McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir.
25 2002).
26    Under AEDPA, a district court may not grant habeas relief
27 unless the state court's adjudication of the claim: "(1) resulted
28
                                     3

in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000).  A federal court must presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1).

Respondent concedes that Petitioner has exhausted his state remedies with respect to the claim that the Board's decision to deny him parole for four years violates the Ex Post Facto Clause. Where, as here, the highest state court to reach the merits issued a summary opinion which does not explain the rationale of its decision, federal court review under § 2254(d) is of the last state court opinion to reach the merits.  Bains v.Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000).  Because the summary dismissal by the California Supreme Court is the sole state court opinion, no state court proceeding provides a rationale for the decision and this Court must conduct an independent review of whether the state court clearly erred in applying controlling federal law.  Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002).

II.  Analysis

Petitioner argues that, as applied to him, changes to Cal. Pen. Code Section 3041.5(b)(2), enacted after the commission of the murder for which he was convicted and allowing the Board to postpone subsequent parole hearings for up to five years rather

4

1  than holding them annually, constitute an ex post facto law barred
2  by Article I, Section 10 of the United States Constitution.
3      Article I, Section 10, of the United States Constitution
4  prohibits the states from passing any "ex post facto Law".  The Ex
5  Post Facto Clause "is aimed at laws 'that retroactively alter the
6  definition of crimes or increase the punishment for criminal
7  acts.'"  Morales, 514 U.S. at 504 (quoting Collins v. Youngblood,
8  497 U.S. 37, 43 (1990)).  "Retroactive changes in laws governing
9  parole of prisoners, in some instances, may be violative of this
10 precept."  Garner v. Jones, 529 U.S. 244, 250 (2000).  The changes
11 to Section 3041.5(b)(2) that are at issue do not alter the
12 definition of Petitioner's crime, so the question is whether the
13 changes increase the punishment for Petitioner's criminal acts.
14     The United States Supreme Court addressed a similar question
15 in Morales.  Morales was sentenced to fifteen years to life in 1980
16 for a murder committed while on parole from a prior murder
17 sentence.  Morales, 514 U.S. at 502-503.  As noted above,
18 California statutes at that time provided for annual subsequent
19 parole reviews.  Id. at 502-503.  In 1981, the law was amended to
20 allow the Board to delay a subsequent hearing for up to three years
21 if the prisoner had been convicted of more than one offense
22 involving the taking of a life and the Board found it unreasonable
23 to expect that parole would be granted in intervening years.  Id.
24 The initial parole hearing for Morales occurred in 1989.  Id. at
25 502.  The Board found Morales unsuitable for parole and that it was
26 not reasonable to expect that he would be found suitable for parole
27 in 1990 or 1991.  Id. at 503.  Under authority of the 1981

5

amendment, the Board set the next parole hearing for 1992. Id. Morales proceeded to file a federal habeas corpus petition, arguing that the 1981 amendment, as applied to him, "constituted an ex post facto law barred by Article I, § 10, of the United States Constitution." Id. at 504.

The Morales Court held that the 1981 amendment "creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes, and such conjectural effects are insufficient under any threshold we might establish under the Ex Post Facto Clause." Id. at 509. The Court found the following factors to be salient: (1) the amendment applied to a class of prisoners who had a remote likelihood of release on parole; (2) the amendment did not affect the date of the initial parole suitability hearing; (3) the Board retained discretion to tailor the frequency of parole hearings to the circumstances of individual prisoners; (4) the Board was required to make particular findings justifying the postponement of a subsequent hearing more than a year in the future; and (5) an expedited hearing could occur if a prisoner experienced such a change in circumstance as to make suitability for parole likely. Id. at 510-513.

The Court revisited retroactive changes in laws governing parole in Jones. When Jones committed his offense in 1982, the rules of the Georgia Board of Pardons and Paroles required reconsideration of parole to take place every three years. Jones, 529 U.S. at 247. In 1985, the Board amended its rules to provide that reconsideration for inmates serving life sentences would take

6

place at least every eight years. Id. Although Georgia's amended parole rules permitted extension of parole reconsideration by five years (not just the two years in Morales), applied to all prisoners serving life sentences (not just to multiple murderers), and afforded fewer procedural safeguards than in Morales, the Court found that these differences were not dispositive. Id. at 251. In finding that Georgia's amended parole rules did not violate the Ex Post Facto Clause, the Court found two salient factors: (1) "the law vests the Parole Board with discretion as to how often to set an inmate's date for reconsideration, with eight years for the maximum" and (2) the Parole Board's policies permitted an expedited review if there is a change in circumstance or new information indicates that an earlier review is warranted. Id. at 254.

Petitioner distinguishes his case from Morales in four respects: (1) the class of prisoners subject to an extended period before parole reconsideration now comprises all those convicted of a murder, not just those convicted of multiple murders; (2) the period before parole reconsideration may now be as long as five years, not just three years; (3) Petitioner was convicted of a single murder, whereas Morales was convicted of multiple murders; and (4) administrative appeals of decisions of the Board are no longer available. The first three of these distinguishing features are indeed different from the facts of Morales, but they do not distinguish Petitioner's case from Jones. In Jones, the class of prisoners affected was comprised of all those serving a life sentence and the period before parole reconsideration was extended to as long as eight years, from a prior three year period. The

7

point that Petitioner was convicted of only a single murder is simply a reflection of the wider class of prisoners to which the amendments to Section 3041.5(b)(2) apply.

Petitioner's fourth point concerns the availability of administrative appeals. On April 15, 2004, the State of California eliminated administrative appeals procedures for decisions by the Board. (Pet'r Ex. A, Digest of New Regulations, April 16, 2004; Cal. Admin. Code, tit. 15 § 2050.) Because Petitioner does not allege that the Board was in error in the decisions it reached in 2006, it is not apparent how the lack of an administrative appeals process affects Petitioner. Petitioner assumes that if the administrative appeals process were in place then he would be able to use it to request an expedited review of his suitability for parole. That the administrative appeals process could be used for this purpose was not clear to the Court in Morales, which found only that if it was, then "[a]n expedited hearing by the Board -- either on its own volition or pursuant to an order entered on an administrative appeal -- would remove any possibility of harm even under the hypothetical circumstances suggested by respondent." Morales, 514 U.S. at 513. Thus, the lack of an administrative appeals process does not distinguish Petitioner's case from Morales unless the Board may not grant an expedited hearing on its own volition. The Morales Court noted a suggestion by the California Supreme Court that "'the Board could advance the suitability hearing.'" Id. at 512 (quoting In re Jackson, 39 Cal.3d 464, 475 (1985)). In addition, the Court noted that it was the Board's practice to review requests for expedited parole suitability

8

1  hearings for merit.  Id.  Petitioner does not allege that the
2  practice of the Board now differs.  Because the Morales Court found
3  that an expedited hearing granted by the Board on its own volition
4  was sufficient to protect the rights of a hypothetical prisoner who
5  had experienced a substantial change in circumstance, without
6  regard to whether an administrative appeals process afforded the
7  prisoner an additional avenue to an expedited hearing, the current
8  lack of opportunity for an administrative appeal does not
9  distinguish Petitioner's case from Morales.  Id. at 513.  Moreover,
10 expedited reviews in Jones likewise were available only by Parole
11 Board policy, not by a formal administrative appeals process.
12 Jones, 529 U.S. at 254.
13     Petitioner's arguments concerning the class of prisoners
14 affected by amendments to Section 3041.5(b)(2), the period of time
15 by which parole reconsideration is extended, and the lack of an
16 administrative appeals process do not establish that the amendments
17 here violate the guidelines established by Morales and Jones.
18 Thus, Petitioner fails to establish that the California Supreme
19 Court clearly erred in applying controlling federal law.
20     Although Petitioner argues that his circumstances have changed
21 and that he would now be found suitable for parole, Petitioner does
22 not allege that he has made a request to the Board for an expedited
23 hearing.  Should the Board deny or fail to respond to such a
24 request, Petitioner would presumably have remedy in California
25 state courts.  Because Petitioner has not exhausted his state
26 remedies for any actual change in circumstances, this Court may not
27 consider that claim.

9

CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The motion for judicial review of the record and copy of case docket sheet is now moot and is DENIED.  (Docket No. 18)

The Clerk of the Court shall enter judgment, terminate all pending motions, and close the file.

Dated:  6/22/09

CLAUDIA WILKEN
United States District Judge